**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

STEVEN R.,[1]

Plaintiff,

v.

FRANK BISIGNANO,
COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 5:25-cv-01119-PD

**MEMORANDUM OPINION AND ORDER AFFIRMING AGENCY DECISION**

Plaintiff challenges the denial of his application for Disability Insurance Benefits. For the reasons stated below, the decision of the Administrative Law Judge is affirmed.

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the United States Judicial Conference.

## I. Pertinent Procedural History and Disputed Issues

On February 20, 2020, Plaintiff filed an application for a period of disability and disability insurance benefits pursuant to Title II of the Social Security Administration ("SSA") alleging disability beginning August 1, 2019. Administrative Record ("AR") AR 15.[2] Plaintiff's application was denied administratively in August 2020, and upon reconsideration in October 2020. AR 89-93, 95-99. Plaintiff requested and appeared at a hearing before an Administrative Law Judge ("ALJ"), which was held telephonically on April 27, 2021. AR 31-57. On May 5, 2021, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. AR 12-26. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council, and they denied it and affirmed the ALJ's decision. AR 1-6. Plaintiff then filed a Complaint with the United States District Court and on April 24, 2023, the District Court entered Judgment of Remand to the Commissioner for further administrative proceedings consistent with the Report. *See Rodriguez S. v. Kijakazi*, 5:21-cv-01605-MCS-AFM, Dkt. Nos. 19-21.

On September 4, 2024, a second hearing was held before the ALJ. AR 423-40. Plaintiff appeared with counsel, and the ALJ heard testimony from Plaintiff and a vocational expert ("VE"). *Id.* On September 25, 2024, the ALJ issued a decision denying Plaintiff's request for disability insurance benefits and finding that Plaintiff had not been disabled from August 1, 2019, through December 31, 2021, the date last insured. AR 404-17. The Appeals Council denied Plaintiff's request for review on March 4, 2025, rendering the ALJ's decision the final decision of the Commissioner. AR 394-400.

---

[2] The Administrative Record is CM/ECF Docket Numbers 8-1 through 8-14. Plaintiff's Opening Brief is at Docket Number 9, the Commissioner's Brief is at Docket Number 12, and Plaintiff's Reply Brief is at Docket Number 13.

The ALJ followed the five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995), *superseded on other grounds by regulation as stated by Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022); 20 C.F.R. § 416.920(a). At step one, the ALJ found that Plaintiff met the insured status requirements of the SSA on December 31, 2021, and had not engaged in substantial gainful activity during the period from his alleged onset date of August 1, 2019, through his date last insured of December 31, 2021. AR 406 ¶¶ 1, 2. At step two, the ALJ found that Plaintiff had the following severe impairments: "obesity; lumbar strain; bilateral impingement syndrome of rotator cuff of the shoulders, right greater than left; bilateral meniscus tear of the knees; sacroiliac joint strain; and unspecified headaches (20 CFR 404.1520(c))." AR 407 ¶ 3. The ALJ found that these impairments significantly limit Plaintiff's ability to perform basic work activities. AR 407.

At step three, the ALJ found that Plaintiff, through the date last insured, did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). AR 410 ¶ 4.

Before proceeding to step four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work with the following limitations:

> can occasionally lift, carry, push or pull up to 20 pounds and 10 pounds frequently; can stand and walk for six hours in an eight hour workday and sit for six hours in an eight hour workday; can frequently balance; all other postural activities are limited to occasional, except no climbing of ladders, ropes, or scaffolds; cannot work at unprotected heights, around dangerous moving machinery, or around other hazards; can occasionally reach above shoulder level bilaterally; is precluded from fast-paced production or assembly-line type work (fast-paced production work is defined as work where the hands are used more than

> frequently); occasionally interact with the general public; and can tolerate occasional changes in workplace setting or routine.

AR 411 ¶ 5.

At step four, the ALJ found that Plaintiff has no past relevant work. AR 415 ¶ 6. At step five, the ALJ made findings of Plaintiff's vocational profile. The ALJ noted that Plaintiff was born on May 26, 1986, and was 35 years old, which is defined as a younger individual, and that Plaintiff has at least a high school education. AR 416 ¶¶ 7-8. The ALJ found the question of transferability of job skills not an issue because Plaintiff has no past relevant work. AR 416 ¶ 9. Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs which exist in significant numbers in the national economy that Plaintiff could have performed. AR 416 ¶ 10. Relying on the testimony of the VE, the ALJ concluded that Plaintiff could have worked as an office helper, mail clerk and router clerk. AR 416. Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined by the SSA from August 1, 2019, the alleged onset date, through December 31, 2021, the date last insured. AR 417 ¶ 11.

Plaintiff raises the following issues:

(1) Whether the ALJ properly decided the step five finding; and

(2) Whether the ALJ properly decided Plaintiff's limitations.

Dkt. No. 9.

## II. Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the agency's decision to deny benefits. A court will vacate the agency's decision "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020) (citations omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant

evidence as a reasonable person might accept as adequate to support a conclusion." *Id.*; *Biestek v. Berryhill*, 587 U.S.97, 103 (2019) (same).

It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record. *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). Where this evidence is "susceptible to more than one rational interpretation" the ALJ's reasonable evaluation of the proof should be upheld. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Tran v. Saul*, 804 F. App'x 676, 678 (9th Cir. 2020).[3]

Error in Social Security determinations is subject to harmless error analysis. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). Error is harmless if "it is inconsequential to the ultimate nondisability determination" or, despite the legal error, "the agency's path is reasonably discerned." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

## III. Discussion

### A. The ALJ Did Not Err at Step Five

Plaintiff contends that the ALJ erred at step five because she failed to resolve an apparent conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). Dkt. No. 9 at 5-10.

#### 1. Background

The ALJ assessed Plaintiff with an RFC that limited him to "can occasionally reach above shoulder level bilaterally." AR 411 ¶ 5. The ALJ asked the VE whether there would be work for a hypothetical individual who, along with other RFC limitations, can occasionally reach above shoulder level

[3] Although statements in unpublished Ninth Circuit opinions "may prove useful [] as examples of the applications of settled legal principles," the Ninth Circuit has cautioned lower courts not to rely heavily on such memorandum dispositions particularly as to issues of law. *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020) ("a nonprecedential disposition is not appropriately used ... as the pivotal basis for a legal ruling by a district court").

bilaterally. AR 434-35. The VE responded in the affirmative and identified three jobs—Office Helper (239.567-010), Mail Clerk (DOT 209.687-026), and Router Clerk (222.687-022). AR 435. The ALJ then asked the VE whether her testimony was consistent with the DOT, to which she responded:

> It is, Your Honor. I'm also using my years of experience, training, and education working with employers to answer the questions that are not in the DOT, which are the bilateral overhead bilateral reaching, the hypothetical #2, hypothetical #3, and hypothetical #4.

AR 437.

The ALJ found, based on the RFC assessment and the VE's testimony, that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as mail clerk, office helper, and router clerk. *See* AR 416-17. The ALJ further found that pursuant to SSR 00-4p, the VE's testimony was consistent with the information contained in the DOT. AR 417. The ALJ stated that for areas that are not addressed by the DOT, such as bilateral reaching, the VE testified that she relied on her education, training, and experience working with employers. AR 417, 437.

**2. Waiver**

The Commissioner argues that Plaintiff's counsel waived the step five issue by failing to raise it at the hearing. Dkt. No. 12 at 2-3. The Commissioner's position has been rejected by the Ninth Circuit in *Lamear v. Berryhill*, 865 F.3d 1201 (9th Cir. 2017).

In *Lamear*, the Commissioner argued that claimant's failure to ask the VE to reconcile the DOT with his findings effectively waived the issue. *See id.* at 1206. The Ninth Circuit disagreed: "our law is clear that a counsel's failure does not relieve the ALJ of his express duty to reconcile apparent conflicts through questioning: 'When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony

that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency.' " *Id.* (quoting *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015)). In so holding, the Ninth Circuit cited with approval *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006), which held that a claimant "was not required to raise th[e conflict] at the hearing, because [SSR 00–4p] places the burden of making the necessary inquiry on the ALJ." *Lamear*, 865 F.3d at 1206 n.5.

The Commissioner cites cases about job numbers; that authority is distinguishable. *See, e.g., Gonzalez v. Saul*, 833 F. App'x 464, 465 (9th Cir. 2021) (claimant's failure to raise argument that ALJ erred in relying on VE testimony that allegedly conflicted with two non-DOT publications forfeited the issue); *Kremlingson v. Saul*, 800 F. App'x 531, 532 (9th Cir. 2020) (same). Accordingly, the Court does not agree that Plaintiff forfeited the issue.

**3. Analysis**

Plaintiff argues that there are apparent unresolved conflicts between Plaintiff's limitation to occasional bilateral reaching above shoulder level and the VE's testimony. Dkt. No. 9 at 8. First, Plaintiff argues that the VE testified regarding bilateral overhead reaching while the hypothetical to the VE specified that Plaintiff was limited to occasional bilateral reaching above shoulder level. *See* AR 437. Next, Plaintiff argues that there is an apparent conflict between the frequent reaching required by all the jobs cited at step five and Plaintiff's limitation to occasional bilateral above shoulder level reaching. All three jobs identified by the VE require "frequent reaching" as defined in the Selected Characteristics of Occupations ("SCO"), the companion publication to the DOT. Plaintiff argues that it is unclear from the DOT descriptions whether the jobs cited require above shoulder level reaching.

At step five of the sequential evaluation, the Commissioner has the burden to "identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." *Zavalin*, 778 F.3d at 845 (alterations in original) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)). In determining whether appropriate jobs exist for a claimant, or whether the claimant can perform his past relevant work, the VE generally will refer to the DOT. *See Light v. Social Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997). The DOT is usually "the best source for how a job is generally performed." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001). Social Security Ruling ("SSR") 00-4p, available at 2000 WL 1898704, at *4 (Dec. 4, 2000), explicitly requires that the ALJ determine whether the VE's testimony deviates from the DOT, and whether there is a reasonable explanation for any deviation.[4] The procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a VE's testimony, particularly in cases where the expert's testimony conflicts with the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007).

Generally, the VE's testimony should be consistent with the DOT. *See* SSR 00-4p, 2000 WL 1898704, at *2; *Massachi*, 486 F.3d at 1153; *see also Lamear*, 865 F.3d at 1205 ("Presumably, the opinion of the VE would comport with the DOT's guidance."); *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016) (DOT "guides the [ALJ's] analysis" at step five). But when conflict occurs, neither the DOT nor the VE's evidence automatically trumps the other. *Massachi*, 486 F.3d at 1153 (citing SSR 00-4p, 2000 WL 1898704, at *2).

---

[4] SSR 00-4p was rescinded and replaced with SSR 24-3p, which became effective on January 6, 2025. However, pursuant to footnote 1 of SSR 24-3p, this Court reviews the decision using the rules that were in effect at the time the decision was issued.

Only after determining whether the testimony of the VE has deviated from the DOT, and whether the VE's explanation for the deviation is reasonable, can an ALJ properly rely on the VE's testimony as substantial evidence to support a disability determination. *Massachi*, 486 F.3d at 1152-54. The ALJ may rely on VE testimony that contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation. *Light*, 119 F.3d at 793; *Johnson*, 60 F.3d at 1435; *Massachi*, 486 F.3d at 1153. Evidence sufficient to support a deviation from the DOT may be either specific findings of fact regarding a claimant's ability to perform particular jobs, or inferences drawn from the context of the expert's testimony. *See Light*, 119 F.3d at 793.

"When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin*, 778 F.3d at 846 (citing *Massachi*, 486 F.3d at 1153-54). Where the ALJ fails to obtain an explanation for and resolve an apparent conflict—even where the VE did not identify the conflict—the ALJ errs. *Edmonds v. Berryhill*, 2017 WL 1217081, at *3 (C.D. Cal. Mar. 31, 2017). However, a failure to inquire about conflicts with the DOT may be harmless error if there is no conflict, or if the VE provides "sufficient support for her conclusion so as to justify any potential conflicts." *Massachi,* 486 F.3d at 1154 n.19.

To "trigger the ALJ's obligation to inquire further," the conflict between the VE's testimony and the DOT "must be 'obvious or apparent.'" *Lamear*, 865 F.3d at 1205 (quoting *Gutierrez*, 844 F.3d at 808). In other words, the VE's testimony typically "must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Gutierrez,* 844 F.3d at 808. To the extent that the VE's opinion "conflicts with, or seems to conflict

with" the DOT – an ALJ may not rely on the VE's testimony to deny benefits at step five unless and until the ALJ has adequately resolved any such conflict. *Gutierrez*, 844 F.3d at 807. Without an explanation from the ALJ addressing this conflict, courts cannot "determin[e] whether the ALJ's decision is supported by substantial evidence." *Zavalin*, 778 F.3d at 846.

In *Anderson v. Berryhill*, 2017 WL 460950, *7 (E.D. Cal. Feb. 1, 2017), cited by Plaintiff, the district court found an apparent conflict when a VE testified that a claimant limited to occasional overhead reaching can perform jobs requiring frequent reaching, without providing a reasonable explanation. The district court in *Anderson,* however, did not acknowledge the Ninth Circuit's decision in *Gutierrez,* which is controlling authority. *See Anderson*, 2017 WL 460950, at *6 (collecting cases but not including *Gutierrez*). The Ninth Circuit in *Gutierrez*, clarified that while "reaching" in the DOT is defined broadly as extending the hands and arms in any direction, not all jobs requiring "frequent reaching" necessarily involve overhead reaching. *Gutierrez*, 844 F.3d at 804.

In *Gutierrez*, the plaintiff's RFC precluded her from lifting her right arm above her shoulder, and the VE opined a person with that limitation could work as a cashier. *Id.* at 807. The plaintiff argued the ALJ erred because he failed to further question the VE as to an apparent conflict, namely, the DOT specified cashiers must engage in frequent reaching. *Id*. The Ninth Circuit disagreed and found that for a conflict to be apparent, the VE's testimony must be at odds with the essential, integral, or expected requirements of a job. *Id*. at 808. "[T]asks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts ... Likewise, where the job itself is a familiar one—like cashiering—less scrutiny by the ALJ is required." *Id.* Recognizing that "not every job that involves reaching requires the ability to reach overhead," the Ninth Circuit then looked at the typical duties of a

cashier set forth by the DOT and applied common knowledge of the job to conclude that there was no apparent conflict with the DOT in that instance. *Id*. Therefore, when a VE testifies there is no conflict, whether an ALJ is required to ask follow-up questions is fact-dependent. *Id*. "[W]here the frequency or necessity of a task is unlikely and unforeseeable," there is no obligation for an ALJ to ask further questions. *Id*.

Here, even though all three jobs identified by the VE—Office Helper (239.567-010), Mail Clerk (DOT 209.687-026), and Router Clerk (222.687-022) require frequent reaching, there was no apparent conflict. Like cashiers discussed in *Gutierrez*, it is uncommon for office helpers, mail clerks, and router clerks to have to engage in overhead reaching. Office helpers perform a wide range of tasks such as sorting and distributing mail, collecting and distributing paperwork, and filing (DOT 239.567-010); mail clerks sort incoming mail for distribution and dispatches outgoing mail, opens envelopes by hand or machine, stamps date and time of receipt on incoming mail, and readdresses undeliverable mail bearing incomplete or incorrect address (DOT 209.687.026); and router clerks sort bundles, boxes, or lots of articles for delivery, reads delivery or route numbers marked on articles or delivery slips, and places or stacks articles in bins according to route, driver, or type (DOT 222.687.022). While some office helpers, mail clerks or router clerks may have to reach overhead in certain circumstances, the frequency or necessity of overhead reaching is unlikely and unforeseeable. Nothing in the DOT's occupation descriptions makes it "likely and foreseeable" that mail clerks, routing clerks, and office helpers limited to occasional above-shoulder reaching cannot perform their duties. Accordingly, the ALJ did not have to ask the VE follow up questions and correctly relied on the VE's testimony, which constituted substantial evidence. Thus, the ALJ did not err at step five.

**B. The ALJ Properly Assessed Plaintiff's RFC and Discounted His Subjective Complaints**

Plaintiff argues that the ALJ erred by: (1) failing to include limitations to account for his sleep-related symptoms in the RFC; and (2) failing to give clear and convincing reasons for rejecting Plaintiff's testimony regarding his sleep-related symptoms. Dkt. No. 9 at 10-14.

**1. Relevant Law**

The RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It reflects the most a claimant can do despite limitations. *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC determination must be based on all the relevant evidence, including diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. § 404.1545. The ALJ "is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (as amended). It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record. *Ford*, 950 F.3d at 1149. When this evidence is "susceptible to more than one rational interpretation," the ALJ's reasonable evaluation of the proof should be upheld. *Ryan*, 528 F.3d at 1198.

**2. The ALJ's Decision**

The ALJ found that Plaintiff's "possible sleep apnea" and traumatic brain injury ("TBI") were not medically determinable impairments. AR 407. Specifically, the ALJ stated:

> The undersigned finds …suspected sleep apnea; and traumatic brain injury (TBI) are not medically determinable impairments due to a lack of objective evidence. There must be objective medical signs or laboratory findings from an acceptable medical source in order to

> establish the existence of a medically determinable impairment. A medically determinable impairment may not be established solely on the basis of symptoms alone or on the claimant's allegations regarding symptomatology (20 CFR 404.1521). Regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities, i.e., medical signs and laboratory findings.

AR 407.

Further, regarding Plaintiff's statements concerning his sleep-related symptoms, the ALJ stated:

> [Plaintiff] claimed he takes a two-hour nap every day, but this seems to be more of a preference and based on his schedule and work could be accomplished along the same schedule. [Plaintiff] submitted a headache log (Exs. 19E, 6F) noting that headaches affect his concentration, but his wife notes that he plays video games three hours a day and he is good at it. It is also noted that he is also very hands on and responsible with his children. For instance, he told his physician that he did not want to change his medications because he needed to be attentive for his children while they are in virtual school. Further, socially, he gets along well with his family, kids, and has a friend that he talks with by phone daily. [Plaintiff] may endorse having a headache almost daily, but it does not keep him from being able to function and while he has some limitations, it does not appear that they are to the degree that would preclude work activity based on the objective medical evidence. For these reasons, [Plaintiff's] allegations are not entirely consistent with the record.

AR 413.

**3. Analysis**

Plaintiff contends that the ALJ erred in failing to account for his sleep-related symptoms in his RFC and erred in discounting his subjective symptom testimony regarding his sleep-related symptoms. Dkt. Nos. 9 at 10-14; 13 at 4-5. Plaintiff points to records in 2019, where it is noted that he "currently

gets about 5 hours of broken sleep" and "[r]eports low energy." AR 302. Other records mention that Plaintiff "relates that he is still not sleeping well" and "[g]et[s] 3-4 hours of interrupted sleep" and declined medication to aid his sleep because "he has young children and he prefers to stay vigilant." AR 382, 789. It was further noted Plaintiff "still struggles with low energy. Most days he gets about 4-5 hours of sleep a night but interrupted. Tries to nap during the day for a few hours." AR 734, 810.

The ALJ acknowledged Plaintiff's "suspected sleep apnea" but found that it was not a medically determinable impairment due to a lack of objective evidence. AR 407. The ALJ noted there was no formal sleep study in the record, just a statement that sleep apnea was suspected. AR 407, 413; *see also* AR 695-96 (in January 2023, a home sleep apnea test found no significant obstructive sleep apnea), 697 (the test was ordered because sleep apnea was "suspected"). The ALJ explained that regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities, *i.e.,* medical signs and laboratory findings. AR 407.

The ALJ highlighted a telehealth consultation on November 5, 2020, where Plaintiff complained of not sleeping well but did not want to try another medication. AR 408 (citing AR 381-84). Plaintiff reported that his wife had gone back to work and he did not want to be groggy when his three kids were participating in distance learning. *Id*. Plaintiff agreed to contact the provider if the insomnia worsens or when he would like to try something. AR 408 (citing AR 381-84). Plaintiff's statement that he did not want to try another sleep medication suggests that his sleep issues were not especially debilitating, which undercuts his assertion that they warranted RFC limitations. *See Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006)

("Impairments that can be controlled effectively with medication are not disabling[.]") (citations omitted). Further, Plaintiff's statement that he did not want to be groggy when his three kids were participating in distance learning, also supported the ALJ's conclusion that Plaintiff's earlier report of two-hour naps seemed to be more of a preference and based on his schedule and work could be accomplished along the same schedule. AR 382, 408, 413. .

The ALJ also highlighted medical records dated February 3, 2021, where Plaintiff reported he was doing okay, and nothing had really changed in his condition, AR 408 (citing AR 814-16); and medical records dated May 4, 2021, where Plaintiff reported his medications were working for the most part and he was able to manage his anxiety and irritability better. AR 408 (citing AR 809-11).

The ALJ discounted Plaintiff's testimony based on inconsistent statements. AR 413. At the consultative examination, Plaintiff told the examiner he stopped working because his wife returned to work and he did not need the money and needed to care for the kids, ages 6, 8, and 10. AR 413 (citing AR 323). However, the ALJ noted that at the hearing, Plaintiff testified that he was terminated from his job for calling out sick due to headaches. AR 413; see also 432.

The ALJ also discounted Plaintiff's sleep-related symptoms based on his daily activities. AR 413. The ALJ noted that Plaintiff took care of his three young children, and his wife reported that he played video games "at least" three hours a day and that "he d[id] it well." AR 413; *see also* AR 224, 227, 232, 323, 325, 382. Inconsistent daily activities "may provide a justification for rejecting symptom testimony," although "the mere fact that a plaintiff has carried on certain daily activities [. . .] does not in any way detract from her credibility as to her overall disability." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (citation and quotations omitted); *see also Ahearn v. Saul*, 988

F.3d 1111, 1117 (9th Cir. 2021) (affirming an ALJ's decision to reject a claimant's testimony that was inconsistent with his ability to play video games and watch television for sustained periods).

In sum, the ALJ did not err in discounting Plaintiff's sleep-related symptoms based on the lack of objective medical evidence, impairments that can be controlled with medication, inconsistent statements, and daily activities. Because the ALJ provided adequate reasons to discount Plaintiff's sleep-related symptoms, Plaintiff's challenge to the RFC assessment fails. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (explaining that an ALJ need not account for properly discounted limitations in an RFC assessment).

### C. The ALJ Did Not Err in Considering the Function Report Submitted by Plaintiff's Wife

Plaintiff argues that the ALJ erred by failing to give any explanation for her treatment of Heather Rodriguez, Plaintiff's wife's statements. Dkt. No. 9 at 14-16. Ms. Rodriguez submitted a third-party function for her husband on March 25, 2020. AR 223-30. Ms. Rodriguez reported that "[Plaintiff] only gets a few hours of sleep per night, but it is not solid sleep. Just to barely function he has to nap during the day (everyday) for at least 2 hours." AR 224. She also reported that Plaintiff "doesn't like having our curtains or blinds open because "a sniper could see in and map out our house."" AR 229. Plaintiff argues that Ms. Rodriguez' statements provide insight into Plaintiff's sleep-related symptoms and confirms that for at least two hours a day, Plaintiff would not be able to perform any work activities. Dkt. No. 9 at 16.

The Commissioner disagrees and argues that the ALJ considered Ms. Rodriguez third-party function report. Dkt. No. 12 at 9-10 (citing AR 415, 223-30). The Commissioner argues that the ALJ relied on this report to find Plaintiff's ability to play video games well for at least three hours a day

inconsistent with his subjective complaints. *Id.*, (citing AR 224, 227, 413, 415).

An ALJ is "not required to articulate" how they evaluated evidence from non-medical sources such as family members. 20 C.F.R. §§ 404.1502(e), 416.902(e). The Ninth Circuit has not yet clarified whether an ALJ is still required to provide "germane reasons" for discounting lay witness testimony under the 2017 regulations. *See Stephens v. Kijakazi*, 2023 WL 6937296, at *2 (9th Cir. Oct. 20, 2023). Here, the ALJ considered but did not articulate how she evaluated Plaintiff's wife's statement. Notably, Ms. Rodriguez did not allege any limitations beyond those set forth by Plaintiff, which the ALJ properly discounted. Thus, even if the ALJ had been required to articulate reasons for discounting Ms. Rodriguez' testimony, any error in not doing so was at most harmless. Therefore, the ALJ's consideration of Ms. Rodriguez' statement was also reasonable. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that when "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints," "it follows that the ALJ also gave germane reasons for rejecting [lay witness] testimony" that "was similar to such complaints").

## IV. Order

Accordingly, for all the reasons stated above, the Court finds that the ALJ's decision does not show legal error and is supported by substantial evidence. It therefore is affirmed. A separate judgment will issue.

IT IS SO ORDERED.

Dated: September 30, 2026

Patricia Donahue

HON. PATRICIA DONAHUE
UNITED STATES MAGISTRATE JUDGE